**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>RT Consulting LLC</u>


   **v.**                                   Civil No. 15-cv-132-PB
                                                  Opinion No. 2016 DNH 036

<u>Kentucky Bankers Association</u>


<u>MEMORANDUM AND ORDER</u>

     RT Consulting LLC ("RTC"), a New Hampshire consulting firm, sued the Kentucky Bankers Association ("KBA"), a trade group based in Louisville, Kentucky, on a variety of legal theories that all stem from a claim that KBA breached a Management Services Agreement ("Agreement") between the two entities.  KBA has responded with a motion to dismiss (Doc. No. 10) contending that the court lacks personal jurisdiction and that the complaint fails to state a viable claim for relief.  In the event that its motion to dismiss is denied, KBA alternatively claims that the court should transfer the case to the Western District of Kentucky (Doc. No. 11).

     The Agreement includes a forum selection clause that seemingly precludes both motions, but KBA argues that it is not subject to the forum selection clause because it was never made a party to the Agreement.  Instead, it contends that RTC

contracted with a separate entity that KBA identifies as the "Kentucky Bankers Association Health and Wealth Benefit Trust." For the reasons described below, RTC has alleged sufficient facts to support its contention that KBA was made a party to the Agreement.  Accordingly, I deny KBA's motions.

## I.  BACKGROUND

KBA is a Kentucky corporation that provides employee benefit plans to banks.  See Doc. No. 1 at 1-2.  In October 2013, KBA's president, Ballard W. Cassady, and a representative of RTC signed the Agreement.  In its preamble, the Agreement states that it is a contract between RTC and an entity named the "Kentucky Bankers Association ('KBA') Health and Welfare Benefit Program."  Doc. No. 1-1 at 1.  Throughout the document, the Agreement repeatedly refers to this entity as "the Company," although an addendum titled "Schedule A" also references "KBA" and "KBA's Plan," specifically noting that "KBA is responsible for all legal requirements and administrative obligations."  Id. at 1-7.  The Agreement requires that all notices to "the Company" be sent to Debra Stamper of the "Kentucky Bankers Association."  Id. at 4.  Stamper is KBA's General Counsel and Executive Vice President.  Doc. No. 1-2.

The Agreement includes a forum selection clause providing

2

that "[a]ny litigation, court action, arbitration, or similar proceeding shall be brought and litigated in the State of New Hampshire."  Doc. No. 1-1 at 4.  It also includes a termination provision allowing either party to terminate the Agreement upon written notice to the other party.  Id. at 2.  The termination provision gives the "breaching party" ten business days after receipt of notice of termination to "cure such default."  Id.

Pursuant to its understanding of the Agreement, RTC developed an online enrollment and communication service for KBA in the spring of 2014.  Doc. No. 1 at 3.  RTC incurred substantial costs to develop the enrollment and communication service, but KBA refused to implement it.  Id.  In response, RTC notified KBA that its refusal to implement the service was a breach of the Agreement.  Id.

Over the course of 2014, RTC continued to provide services to KBA pursuant to the Agreement.  Id. at 4.  In the fall of 2014, RTC expended significant resources to develop a "Wellness Program" to provide health benefits to KBA's plan participants.  Id.  The parties discussed a proposal to amend the Agreement to address the Wellness Program, but KBA ignored RTC's requests to amend the Agreement and the proposed amendment was never adopted.  Id. at 4-5.  Nevertheless, RTC implemented the Wellness Program, getting it "up and running" by January 2015.

3

<u>Id.</u> at 5.

In March 2015, Stamper sent RTC a letter stating that "the Participating Employer Committee of the KBA Health and Welfare Benefit Program ('KBA Program') has determined that it is necessary to terminate the relationship pursuant to paragraph 9.b of the Management Services Agreement. . . ."  Doc. No. 1-2. Stamper stated in her letter that she "consider[ed] the 10-day cure period to have been satisfied" because of "the continued and repeated requests by the Program for compliance with the Agreement."  <u>Id.</u>  The letter did not specify how RTC had allegedly breached the Agreement.  <u>See</u> <u>id.</u>

Soon after, RTC filed this action, bringing five claims against KBA:  breach of contract; breach of the covenant of good faith and fair dealing; unjust enrichment; promissory estoppel; and unfair and deceptive trade practices under Section 358:2 of the New Hampshire Revised Statutes.  Doc. No. 1 at 6-10.  KBA countered with the present motions to dismiss and to change venue.

## II.  <u>ANALYSIS</u>

KBA argues that RTC's complaint must be dismissed because the court lacks personal jurisdiction over it, and because the complaint fails to state a viable claim for relief. In the

alternative, it argues that the action should be transferred to the Western District of Kentucky if it is not dismissed. Because the standards of review that govern these arguments differ, I deal with each argument separately.

A.   **Personal Jurisdiction**

KBA first moves to dismiss for lack of personal jurisdiction.  When a defendant contests personal jurisdiction, the plaintiff bears the burden of demonstrating a basis for jurisdiction.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).  Because I have not held a hearing on the motion, RTC must only make a prima facie showing that this court has personal jurisdiction.  See Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  A prima facie showing requires the plaintiff to "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (internal quotation marks omitted).  I consider RTC's allegations to the extent they are supported by specific facts set forth in the record and consider evidence offered by KBA "to the extent that [it is] uncontradicted."  Cossaboon, 600 F.3d at 31 (internal quotation marks omitted).  I construe the evidence "in the light most congenial to the plaintiff's jurisdictional claim," Hannon v.

Beard, 524 F.3d 275, 279 (1st Cir. 2008), but will not "credit conclusory allegations or draw farfetched inferences." Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007).

A court's personal jurisdiction over a defendant residing outside the forum state ordinarily depends upon whether both the requirements of the forum state's long-arm statute and the Fourteenth Amendment's due process clause have been satisfied. Cossaboon, 600 F.3d at 29 n.1.  Where, however, the parties have consented to a forum selection clause, they generally waive the right to contest personal jurisdiction, and there is no need to determine whether the defendant has sufficient contacts within the forum state to satisfy the requirements of the due process clause.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) ("[Forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."); Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ."); E. Bridge, LLC v. Bette & Cring, LLC., 2006 DNH 061, 9 ("[B]y agreeing that litigation arising out of the contract would be conducted exclusively in a court of competent

jurisdiction under New Hampshire law, [the defendant] voluntarily relinquished any objection that it might have had to such a court's exercise of personal jurisdiction over it.").

Here, RTC argues that KBA waived any challenge to personal jurisdiction by consenting to the Agreement's forum selection clause, which mandates that "[a]ny litigation . . . shall be brought . . . in the State of New Hampshire."  Doc. No. 1-1 at 4.  KBA counters that it was not a party to the Agreement, and thus the forum selection clause does not bind KBA.  Instead, it argues that RTC contracted with the "Kentucky Bankers Association Health and Welfare Benefit Program," which KBA claims is a shorthand reference to the "Kentucky Bankers Association Health and Wealth Benefit Trust" (the "trust"), a "stand-alone, non-profit organization separate and distinct from KBA."  See Doc. No. 10-1 at 1-2.  Thus, according to KBA, RTC contracted with this separate trust, not KBA itself.  And, because the trust functions independently from KBA, the forum selection clause does not apply.

This argument is unpersuasive.  To begin, at this juncture, I must credit the plaintiff's factual assertions as true so long as they assert more than "conclusory allegations" or "farfetched inferences."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) ("In conducting the

7

requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim").

Here, RTC states in its complaint that it entered into the Agreement with "KBA," defined as the "Kentucky Bankers Association." Doc. No. 1 at 1-2. To support this assertion, RTC points to the language of the Agreement and certain extrinsic evidence. First, RTC argues, the Agreement was signed by Ballard W. Cassady, who is the President and CEO of KBA. Doc. No. 1-1 at 5. Second, the Agreement requires all notices to be sent to Debra Stamper of the "Kentucky Bankers Association." Id. at 4. Third, Schedule A of the Agreement notes that "KBA" – not a "Program" or "Trust" – is responsible for "all legal requirements and administrative obligations with regard to the Plan." Id. at 6. Fourth, the word "trust" is absent from the Agreement. See id. Finally, and perhaps most fundamentally, RTC maintains that it simply does not make sense that RTC would contract with a "Benefit Program," which does not appear to be a legal entity, rather than KBA itself, which is an association that administers benefit programs. These arguments are persuasive at least for purposes of the present motion, and therefore I credit RTC's assertion that KBA was a party to the

8

Agreement.[1]

With this understanding, I turn now to the Agreement's forum selection clause.  "Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009). Permissive forum selection clauses merely "authorize jurisdiction in a designated forum;" mandatory clauses authorize jurisdiction only in that forum, to the exclusion of others. Id.  To be mandatory, "a forum selection clause must contain language that clearly designates a forum as the exclusive one." Arguss Commc'ns Grp., Inc. v. Teletron, Inc., 2000 WL 36936, at *6 (D.N.H. Nov. 19, 1999) (internal quotations omitted).

The forum selection clause at issue in this case provides that "[a]ny litigation, court action, arbitration, or similar proceeding shall be brought and litigated in the State of New Hampshire."  Doc. No. 1-1 at 4.  This is mandatory language. The clause states that "any" litigation "shall" be brought in

---

[1] Even if, as KBA contends, the contract was between RTC and the Trust, the proffered facts would support a claim that KBA, through the actions of its CEO, was acting as an undisclosed agent for the Trust when he signed the Agreement.  If so, both KBA and the Trust would be deemed to be parties to the Agreement, who are bound by the Agreement's forum selection clause under basic principles of agency law.  See Restatement (Third) of Agency § 6.03.

New Hampshire.  Id.  According to First Circuit precedents, the
word "shall" carries a "mandatory sense." Rivera, 575 F.3d at
17, n.5 (describing "shall" as a "typical mandatory term");
Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 12
(1st Cir. 2001) (describing the word "will" as "commonly having
the mandatory sense of 'shall' or 'must'"); Barletta Heavy Div.,
Inc. v. Erie Interstate Contractors, Inc., 677 F. Supp. 2d 373,
376 (D. Mass. 2009) ("[T]he First Circuit has found words such
as 'shall,' which carry a 'mandatory sense,' to demonstrate
parties' exclusive commitment to the named fora.").  Moreover,
the Agreement does not say that only certain types of litigation
belong in New Hampshire; it states that "any litigation, court
action, arbitration, or similar proceeding" shall be brought in
New Hampshire.  Doc. No. 1-1 at 4 (emphasis added).  This broad
language reflects the parties' intentions to make New Hampshire
the exclusive venue for any legal dispute.  Cf. Paper Exp., Ltd.
v. Pfankuch Maschinen GmbH, 972 F.2d 753, 756 (7th Cir. 1992)
("The phrase 'shall be filed,' coupled with the phrase 'all
disputes,' clearly manifests an intent to make venue compulsory
and exclusive.").  As such, the forum selection clause is
mandatory.

Mandatory forum selection clauses, like this one, carry a
"strong presumption of enforceability." Rivera, 575 F.3d at 18.

This presumption may be overcome only by establishing one or more of four factors: "(1) the clause was the product of fraud or overreaching; (2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought . . . ." Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 93 (1st Cir. 2010) (internal alterations, citations, and quotations omitted).  Thus, "the forum clause should control absent a strong showing that it should be set aside." M/S Bremen, 407 U.S. at 15.

KBA makes no such showing here.  It does not address the four factors described above.  Instead, it puts forward two unrelated arguments: first, that several of RTC's claims "do not involve the Agreement;" and second, that the clause is "so vague and ambiguous as to be incapable of enforcement."  Doc. No. 11-1 at 7-8.  These arguments are unconvincing.

First, RTC's claims do involve the Agreement.  The Agreement provides the entire basis for the two parties' relationship; RTC furnished services to KBA's plan participants pursuant to the Agreement.  RTC's unjust enrichment, promissory

11

estoppel, and consumer protection claims all arise from its understanding of its contractual relationship with KBA, which is grounded in the Agreement.

Second, rather than being too vague, the forum selection clause is actually quite clear: it states simply that any litigation shall be brought in New Hampshire.  KBA criticizes the clause for not containing language limiting it to litigation arising under the Agreement, but cites no cases requiring inclusion of this type of language for a clause to be enforceable.  The clause therefore controls.

The remaining personal jurisdiction analysis is straightforward.  By agreeing that any litigation arising from the contract would be conducted in New Hampshire, KBA "voluntarily relinquished any objection that it might have had to such a court's exercise of personal jurisdiction over it." E. Bridge, LLC, 2006 DNH at 9; see also Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 58 (D. Mass. 2011) ("By signing a forum selection clause, however, a party to a contract waives its right to challenge personal jurisdiction."); Inso Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 166 (D. Mass. 1998) ("A party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection cause.").  As such, this court

may properly assert personal jurisdiction over KBA, and KBA's
personal jurisdiction motion fails.

**B.**   **Failure to State a Claim**

KBA next brings a motion to dismiss for failure to state a
claim, marshalling essentially the same argument it made to
contest personal jurisdiction: that KBA was never a party to the
Agreement.  KBA mounts no specific challenges to any of RTC's
individual claims.  Accordingly, for the reasons discussed
above, RTC has alleged sufficient facts to establish that KBA
was a party to the Agreement.  Because KBA presents no other
argument in support of its motion to dismiss for failure to
state a claim, this motion is denied as well.

**C.**   **Change of Venue**

KBA argues in the alternative that I should transfer venue
to the Western District of Kentucky.  28 U.S.C. § 1404(a)
provides that "[f]or the convenience of parties and witnesses,
in the interest of justice, a district court may transfer any
civil action to any other district or division where it might
have been brought . . . ."  "The burden of proof rests with the
party seeking transfer; there is a strong presumption in favor
of the plaintiff's choice of forum."  Jackson Nat'l Life Ins.
Co. v. Economou, 557 F. Supp. 2d 216, 219-20 (D.N.H. 2008)
(quoting Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir.

2000)).  The court has "wide latitude" in determining whether to grant a motion to transfer venue.  Id. at 220 (citing Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003)).

When the contract at issue contains a valid mandatory forum selection clause, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 579, 581 (2013) (internal quotations omitted) ("The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.").  Courts evaluating a § 1404(a) motion to transfer in cases involving a forum selection clause "should not consider arguments about the parties' private interests," such as litigation costs or the convenience of witnesses.  Id. at 582.  Rather, they may consider only "public-interest factors," such as court congestion, but these factors will "rarely defeat a transfer motion." Id. at 581-82, 581 n.6.

As I have explained, KBA cannot avoid the effect of the Agreement's forum selection clause by claiming either that it was not made a party to the Agreement or that the forum selection clause was permissive rather than mandatory.

14

Accordingly, the only argument that is left to KBA to support its change of venue motion is to cite what it refers to as "1404(a) factors," including the convenience of witnesses and the fact that the events at issue largely transpired in Kentucky.  These factors, however, relate to "private interests," and are therefore inapplicable here since the parties agreed to a mandatory forum selection clause.  Id. at 581-82, 581 n.6 ("[P]rivate interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.") (punctuation omitted).  As such, KBA has not persuaded me that this is an "exceptional case[]" where the mandatory forum selection clause should not control, and I therefore decline to transfer the case.  See id. at 582 ("Whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting.") (internal alterations and quotations omitted); E. Bridge, LLC, 2006 DNH at 12 ("[T]he contract's mandatory forum selection clause weighs heavily against transfer.").

15

### III.  <u>CONCLUSION</u>

For the reasons stated above, I deny KBA's motion to dismiss (Doc. No. 10) and its motion to change venue (Doc. No. 11).

SO ORDERED.

<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

February 26, 2016

cc:  K. Neil Austin, Esq.
     Stephen Bychowski, Esq.
     Jeffrey S. Follett, Esq.
     Eric M. Jensen, Esq.
     John T. McGarvey, Esq.
     Michele E. Kenney, Esq.